UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEBORAH JEAN HARRIS,

     Plaintiff,

v.                        Case No. 4:19-cv-448-MW-HTC

ANDREW SAUL,
Commissioner of Social Security,

     Defendant.

_____/

REPORT AND RECOMMENDATION

This case is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Deborah Jean Harris's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383.[1]  Ms. Harris's complaint was referred to the undersigned for a report and recommendation to the District Judge.  Upon review of the record, the undersigned finds that the Administrative Law Judge's ("ALJ")

_____

[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).  Thus, regardless of a whether a referenced statute herein addresses DIB or SSI, only, the legal principle at issue applies equally to both claims.

residual functional capacity ("RFC") determination is not supported by substantial evidence. The decision of the Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this order.

## I.    ISSUE ON REVIEW

Ms. Harris raises a single issue in this appeal – that the ALJ's RFC determination is not supported by substantial evidence and, instead, is crafted from whole cloth. ECF Doc. 15 at 1.

## II.    PROCEDURAL HISTORY

On November 14, 2016 and January 24, 2017, respectively, Ms. Harris protectively filed an application for DIB and SSI, respectively, claiming disability with an onset date of August 21, 2016, for knee, back, arm, wrist, and neck problems. T. 11, 74.[2]    The Commissioner denied the application initially and on reconsideration. T. 100-03, 107-11. The ALJ conducted a hearing on June 11, 2018. T. 36-72 (hearing transcript). On October 29, 2018, the ALJ issued her decision, finding Ms. Harris not disabled under the Act. T. 11-26. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-4. The Commissioner's determination is now before the court for review.

---

[2] The administrative record filed by the Commissioner consists of 10 volumes (ECF Docs. 11-2 through 11-11) and has 592 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

## III.    FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

•    Ms. Harris has the following severe impairments: obesity, degenerative disc disease; degenerative joint disease/arthritis, bilateral knees; mild degenerative changes, left knee; dysfunction of major joints/bursitis and chondromalacia, right knee; and hypertension.  T. 13.

•    Ms. Harris has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she can occasionally kneel, crouch, crawl, and climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to wetness, vibration, and hazards (machinery, heights, etc.).  T. 13-14.

•    Ms. Harris is capable of performing past relevant work as a fast food manager and, in the alternative, there are other jobs that exist in the national economy that she can perform.  T. 20.

•    Ms. Harris has not been under a disability, as defined in the Act, from August 21, 2016, through October 29, 2018.  T. 22.

## IV.    STANDARD OF REVIEW

Pursuant to 20 C.F.R. § 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five (5) steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[3]

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, he is not disabled.

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the

---

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

[Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which

detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

## V.   FACT BACKGROUND AND MEDICAL HISTORY

Ms. Harris was 52 years old at the time of her onset date. T. 73, 84, 306. Her disability claim arises from an injury that occurred while she was working as a manager at McDonald's. Specifically, on August 20, 2016, she fell on both knees. T. 52-53. She received a settlement of approximately $16,000. T. 45. Subsequently, she aggravated her injuries on March 14, 2017, when she fell again while shopping at Best Buy. T. 61.

## A. Claimant's Testimony

Ms. Harris offered testimony as to her health, daily activities, and work history at the June 11, 2018 hearing before the ALJ.  T. 36-71.  She has an eleventh-grade education and does not have a GED.[4]  T. 42-43.  She was 5'3" and 245 pounds at the time of the hearing.  T. 56.  For the past fifteen (15) years, Plaintiff worked as fast food restaurant manager.  T. 68, 242.

As stated above, Ms. Harris fell while on the job at McDonald's and has not returned to work since her August 2016 fall because she is "just in too much pain to go back and do anything."  T. 46.  She says pain in her back and knee keeps her from working.  T. 46.  She also has one leg that is bigger than the other which puts strain on her back and body.  T. 46.  She takes medicine for her back pain, but it does not work.  T. 46-47.  She has no side effects from any of the medications she takes.  T. 50.  According to Ms. Harris, the pain lasts "a long time," and she "can't really sit down."  T. 50.  She has to "stand up with the knees."  T. 50.  She also has a hard time sleeping at night.  T. 50.

Ms. Harris described a "good day" as doing "[p]retty much nothing really.  I get up, I sit down, I get up, I sit down."  T. 50.  On a "bad day", she just sleeps.  T. 51.  She described her "typical day" as getting up, taking a shower, and "pretty much get back into bed."  T. 55.  She would wake up around 11 or 12 and then make herself

---

[4] Some parts of the record indicate Ms. Harris has a twelfth grade education.  T. 241, 273.

a simple meal.  T. 55.  She watches TV or reads.  T. 55.  She can also do laundry.
T. 55-56.  She does not sweep or pick up trash.  T. 65.  Although she lives alone and
started living alone about two (2) years prior to the hearing, her daughter helps her
with everything else.  T. 43, 56.  She can grocery shop by sitting in a "wheelchair
thing."  T. 57.

She previously underwent physical therapy and was released.  T. 51.  She did
not find it helpful because she was "still in a lot of pain."  T. 51.  She has also had
a trigger point injection to relieve the pain, but contends it lasted only a couple of
hours.  T. 53.  She stated that she could walk no further than from where she was
sitting during the hearing to the door.  T. 53.  She could not say how many minutes
she could walk.  T. 54.  When the ALJ asked how long Ms. Harris could sit, she
stated that she had "been sitting down for the past couple of hours and I don't sit
long."  T. 59.  Ms. Harris also testified that she can lift or carry only up to three (3)
pounds.  T. 65.

At the time of the hearing, Ms. Harris wore a back brace and a knee brace,
both of which were prescribed.    T. 58.    Ms. Harris also complained about
hypertension.  T. 53.

### B. Relevant Medical History

The First Report of Injury for the August 2016 fall states that she injured her
right knee and that it was swollen.  T. 286.  She saw Dr. Peters on that day.  His

notes indicate that she "injured her right knee when she tripped over a bun rack." T. 295. She could not easily flex the knee but could extend it reasonably well and it hurt her to bear weight on it. T. 295. Additionally, the knee was swollen. T. 295. His report also indicates that she hit her left knee as well but that it was not hurting as much. T. 295. X-rays taken at that time showed a probable fracture of the proximal right tibia. T. 295. Dr. Peters referred Ms. Harris to an orthopedic and gave her some medication, crutches and a knee immobilizer. T. 295. He also told her to stay off work until she saw an orthopedic. T. 295.

Ms. Harris began receiving treatment from Dr. Mejia and Jonathan Salamat, PA-C, at Tallahassee Orthopedic Clinic ("TOC") on August 25, 2016. On that date, she described her pain as severe with a rating of 9/10. T. 306. She described her symptoms as "constant throbbing, aching and sharp." T. 306. She had mild medial sided pain and swelling. T. 306. She indicated her symptoms were relieved with rest and medication and made worse with activity, such as sitting or movement. T. 306. On objective examination of the right knee, TOC notes indicate Ms. Harris had "no quadriceps atrophy, ecchymosis or deformity"; she was positive for tenderness to pressure anterior patella tendon insertion to tibia and for effusion. T. 307. An examination of her left knee did not show any tenderness, deformity or injury; the range of motion was unremarkable; and there was no gross instability. T. 307.

Additionally, the strength and tone were normal.  T. 307.  Ms. Harris was given a hinged knee sleeve for her right knee.  T. 309.

Ms. Harris returned to TOC for an examination on October 14, 2016.  T. 311. The TOC notes for that visit indicate there were no significant changes in the current symptoms.  T. 311.  Ms. Harris reported pain, which was intermittent, dull and achy, and gave it a 5/10 rating.  T. 311.  She indicated the pain improved with medicine and rest and worsened with dancing and activities.  T. 311.  An examination of the right knee showed "no quadriceps atrophy, effusion ecchymosis."  T. 311.  Her strength was a 5/5 in all areas.  T. 311.  The notes state that "examination of the knee reveals minimal anterior swelling overlying the patella tendon.  There is mild tenderness at the proximal insertion of the patella tendon, and "slight discomfort." T. 311.  An examination of the left lower extremity was the same as in August.  T. 311.  Ms. Harris was informed of therapeutic treatments, such as weight loss, exercise and physical therapy.  T. 311.

She was examined by Dr. Mejia at TOC on November 28, 2016.  T. 314.  The notes for that visit show that she rated her pain as a 10/10 and that she had no relief from the intraarticular injection she received a month earlier.  T. 314.  She described her pain as sharp, dull, achy, stabbing and moderate and constant.  T. 314.  A physical examination of her right knee revealed that she had "full range of motion and strength of her quad," no effusion and no J sign.  T. 315.  The notes also state

that "remainder of the musculoskeletal exam does not reveal any significant abnormalities." T. 315. Additionally, Dr. Mejia re-reviewed the September 8, 2016 MRI of her right knee without contrast (T. 317), which showed some soft tissue edema anterior to the patella and some old and chronic chondromalacia changes as well as some cystic edema over the chondral surface and some tricompartmental changes. T. 315.

As stated above, Ms. Harris had a second fall while shopping at Best Buy on March 14, 2017. T. 341. She went to Capital Regional Medical Center Emergency Room after the fall. A physical examination of her lower extremities noted tenderness in her right and left knee. T. 325. An x-ray was done which showed "no fracture[s or] subluxation" and "arthritic changes of the knee". T. 329.

Ms. Harris began receiving chiropractor treatments from Robert Fedore, D.C. in May 2017. Her first visit was on May 2, 2017. T. 341. The notes of that visit state that "Ms. Harris has been able to work and has not lost any time at work since the accident," referring to the March 14, 2017 fall. T. 341. However, "[s]ince the accident, the patient has had problems with standing, walking, sitting, and insomnia." T. 341. With regard to her left knee, Ms. Harris complained that the symptoms came on immediately and have not changed. T. 341. She said that the pain is moderate to severe and that it occurs 80% to 100% of the time. She rated the pain an 8/10. T. 341. She stated that it is aggravated by activities of daily living and

relieved by resting and medications.  T. 341.  Ms. Harris reported that the pain in her right knee was severe and gave it an 8/10.  T. 342.  She contended the pain is spasmodic and is aggravated by standing and activities of daily living.  T. 342.  With regard to her back, Ms. Harris reported that the pain occurred 80% to 100% of the time, was moderate to severe, and gate it rating of 7/10.  T. 342.  Like her right knee pain, she reported that her back pain was aggravated by standing and activities of daily living.  T. 342.  Ms. Harris gave similar accounts of the pain in lower left and right legs.  T. 342.

A physical examination showed tenderness to digital palpation and muscle tension on the left knee and right knee.  T. 343.  Several orthopedic tests were also performed.  T. 344-45.  An MRI of her back was performed on June 14, 2017, which showed L4-L5 and L5-S1, disc bulges and bilateral facet arthropathy.  T. 385.

Ms. Harris received chiropractic treatments from Florida Wellness Center from May 2017 until August 2017.  On August 16, 2017, Dr. Fedore determined Ms. Harris was at maximum medical improvement and gave her an impairment rating of 2% for the Lumbar spine, 1% for the left knee and a combined rating of 3% to the body as a whole.  T. 406.

On January 31, 2018, Plaintiff had another x-ray of the left knee which showed "mild degenerative changes of the left knee without acute fracture or

dislocation." T. 447. On February 2, 2018, Plaintiff had an x-ray of her right knee, which showed degenerative arthropathy and no fracture or joint effusion. T. 449.

Ms. Harris returned to Florida wellness Center in February and on two occasions in March 2018, for additional chiropractic treatments. Notes for those visits indicate that she returned because of a "recent exacerbation to her condition." T. 453, 455. During her March 16, 2018 visit, she reported pain in her left knee of 9/10, 5/10 on her right knee, 5/10 in her lower back, 5/10 in her lower left leg, and 6/10 in her lower right leg. T. 544. She reported the pain in those areas as "constant" other than in her right knee, which she reported as frequent. T. 544.

The March 2018 notes also indicate that her MRI results for her left knee showed: "(1) abnormal appearance of the patella tendon with a wavy appearance thickening and partial tears; (2) partial near full thickness tear at the insertion of the quadriceps tendon; (3) prepatellar edema; and (4) linear signal within the posterior horn of the medial and attenuation correlate clinically as to the possibility of a meniscal tear." T. 544-545. She was referred to an orthopedic doctor for further options. T. 546.

### C. State Agency Examiner Opinion

In April 2017, on reconsideration, state agency examiner, Dr. Junejo, reviewed Ms. Harris' medical records, including records from Capital Regional Medical Center (presumably relating to the March 2017 fall), and prepared a RFC

assessment.  T. 322.  Dr. Junejo notes that the ER records show that Ms. Harris had a fall and that she was diagnosed with arthritis of both knees and bilateral knee pain. T. 87.  Additionally, Dr. Junejo noted that bilateral knee x-rays showed no fractures or subluxation, loss of joint space, endplate scierosis and osteophyte formation, which were consistent with degenerative joint disease.  There was also no soft tissue swelling.  T. 87.  Dr. Junejo's provided the following physical residual functional capacity assessment:  Ms. Harris could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.  T. 89.  According to Dr. Junejo, the RFC assessment was good for one (1) year after the onset date, so through August 2017. T. 89.

## VI.   ANALYSIS

As stated above, the sole issue on appeal is whether the ALJ's RFC determination that Ms. Harris can perform light work, and thus return to her job as a fast food manager, is supported by substantial evidence or, as Ms. Harris suggests, made out of whole cloth.  The Act's regulations define "light work," as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b) and 416.967(b).  Step Four of the ALJ's 5-

step disability determination is where the ALJ makes an RFC determination. As in this case, that step is generally where the "rubber meets the road" and is the basis of many social security appeals.

At the administrative level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The RFC assessment "is the most [a claimant] can still do despite [his or her] limitation." 20 CFR § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5 (July 2, 1996); *see also, Swindle v. Sullivan*, 914 F. 2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545).

Additionally, the ALJ is required to assess the claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). The claimant's age, education and work experience also are considered in determining RFC and whether a claimant can return to her past relevant work. *See* 20 C.F.R. § 404.1520(f). An ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion from an examining medical source about a claimant's functional capacity. *Jackson v. Colvin*, 2013 WL 5441977, at *3 (M.D. Ala. Sept. 27, 2013).

The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairment and whether they result in disability. *See Perez v. Comm'r of Soc. Sec.,* 2015 WL 1277832 at *7 (M.D. Fla. Mar. 20, 2015) (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1997)). The ALJ's assessment must identify and describe specific medical and nonmedical evidence that supports his conclusion. SSR 96-8p. The "ALJ's findings must be clear, concise, and unambiguous [so] that the Court can engage in 'meaningful …review of the ALJ's conclusion as to the level of work which [Plaintiff] could perform….'" *Norris v. Berryhill*, 2017 WL 4385333, at *15 (N.D. Ga. Sept. 29, 2017) (quoting *Maffia v. Comm'r of Soc. Sec.,* 291 F.. App'x 261, 265 (11th Cir. 2008)).

In this case, it unclear how the ALJ arrived at the physical limitations identified in her RFC assessment for Ms. Harris. The ALJ has failed to identify any specific medical or nonmedical evidence that supports her conclusion. In her decision, the ALJ summarized the objective medical evidence, Ms. Harris's testimony of her symptoms and limitations, and the treatment notes. She then cites the medical opinions of stage agency consultant, Dr. Junejo, and treating orthopedic, Dr. Mejia, for Ms. Harris's physical limitations. She, however, strays from those opinions in reaching her RFC determination but does so without "showing her work." *See Eaton v. Colvin*, 180 F.Supp. 3d 1037 (S.D. Ala. 2016) ("ALJs must

'show their work' or, said somewhat different, show *how* they applied and analyzed the evidence to determine plaintiff's RFC.") (emphasis included).

With regard to Dr. Junejo, the ALJ explained that she gave great weight to Dr. Junejo's RFC assessment "because it was grounded in the available evidence and supported with a relevant explanation at the time it was rendered." T. 19. The ALJ recognized, however, that Dr. Junejo "did not have the opportunity to consider more recent hearing level evidence, including additional subjective complaints described during the hearing testimony, which supports further restriction to the light exertional level, particularly with the additional diagnosis of degenerative disc disease in mid-2017." T. 19. Likewise, while the ALJ also assigned great weight to Dr. Mejia's November 2016 opinion that Ms. Harris had reached maximum medical improvement without restrictions with regard to her right knee, she noted that "more recent hearing-level evidence supports additional restrictions due to subsequent diagnosed impairments." T. 19.

The ALJ's explanation is insufficient for the undersigned to determine how she arrived at her RFC determination. Specifically, while the ALJ disagreed with Dr. Junejo's RFC determination because Dr. Junejo did not have the benefit of hearing Ms. Harris's testimony, that testimony does not support the RFC determination reached by the ALJ. To the contrary, Ms. Harris testified she could walk only from her chair to the door, that she could only lift up to 3 pounds, and that

she has to crouch when she is standing because of her pain.  Similarly, while the ALJ strayed from Dr. Mejia's opinion that Ms. Harris had no restrictions, it is unclear how the ALJ arrived at her restrictions of light work.

Likewise, although the ALJ concluded that Ms. Harris's testimony was not entirely consistent with the medical evidence, it is not clear from the ALJ's decision which part of Ms. Harris's testimony she found credible.  It is also not clear from the ALJ's decision which part of Ms. Harris's testimony she considered relevant in reaching her RFC assessment.  *See Barrio v. Comm'r of Soc. Sec. Admin.,* 394 F. App'x 635, 637 (11th Cir. 2010) (finding that ALJ's RFC assessment was ambiguous where the ALJ determined claimant should be restricted to low-stress work but noted that he was adopting the more restrictive of the two assessments of the state agency doctors and thus the court could not determine whether the assessment was supported by substantial evidence). The ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved." *Pinder v. Astrue*, 2010 WL 2243248, at *6 (N.D. Ind. June 1, 2010).

Similarly, although the ALJ strayed from Dr. Junejo's RFC assessment because Dr. Junejo did not have the benefit of the June 2017 MRI of Ms. Harris's back, the ALJ does not explain how the disk bulges and bilateral face arthropathy noted in the MRI affected the limitations she placed on Ms. Harris in arriving at her RFC. *See Perez v. Comm'r of Soc. Sec.*, 2015 WL 1277832, at *8 (M.D. Fla. Mar.

20, 2015) (remanding decision because ALJ failed to discuss the limiting effects of Plaintiff's headaches). "The ALJ's failure to tie her RFC assessment to any particular findings and to any specific impairment is in direct contravention to 20 C.F.R. § 404.1594(f)." *See Monroe v. Barnhart*, 372 F. Supp. 2d 976, 985 (S.D. Tex. 2005) (remanding case because the ALJ's RFC determination was not supported by substantial evidence).

Although the ALJ assigned weight to the medical evidence, she did not describe how the medical facts and nonmedical evidence impacted any particular limitation. In other words, the ALJ did not link her findings to the evidence in the record. Her failure to provide any "meaningful reference to the medical record" and failure "to explain sufficient the [] reasonings for [her] findings" deprives this Court of the "benefit of ALJ's full reasoning making review at this juncture inappropriate." *See Ervin v. Astrue*, 2012 WL 2153232, at *6 (N.D. Ala. June 11, 2012) (remanding ALJ's decision "because the ALJ provided inadequate reasoning and failed to substantiate his findings with specific references to the objective medical record").

For example, while the ALJ explains why she does not think the Ms. Harris can lift 50 pound occasionally or 25 pounds frequently, she does not explain how she determined Ms. Harris can lift 20 pounds. Thus, the undersigned cannot determine based on the ALJ's decision whether her RFC assessment was based on substantial evidence. *See e.g., Pinder*, 2010 WL 2243248 at * 6 (remanding case

because "[t]he ALJ did not link his findings to the evidence in the record, such that this Court can assess the agency's ultimate findings and afford the plaintiff meaningful judicial review"); *Saladino v. Colvin*, 2015 WL 1268261 at *7 (M.D. Fla. Mar. 19, 2015) ("Because the ALJ failed to explain his rationale, the undersigned cannot review the ALJ's findings relating to Plaintiff's physical limitations to determine whether the RFC Assessment is supported by substantial evidence.").

While the ALJ's finding of no disability may ultimately be correct, it is not this Court's job to provide an explanation for the ALJ's determination in the absence of one. *See Trammell v. Colvin*, 2013 WL 4028489, at *3 (M.D. Ala. Aug. 7, 2013) ("The problem confronting the court . . . is that the ALJ does not [*himself*] explain how [he] reached [his] conclusion . . . and the court cannot read the ALJ's written decision to include—even implicitly—the rationale now advanced by the Commissioner."). Thus, the undersigned recommends that the decision be remanded for the ALJ to make a RFC finding and disability determination that contains sufficient explanations and is substantiated by the medical and non-medical evidence.

Ms. Harris also argues, alternatively, that the ALJ failed to develop the record, namely, that she should have obtained another consultative examination given that Dr. Junejo's RFC assessment was in April 2017, before Plaintiff had started her

chiropractic treatments.  ECF Doc. 15 at 22.  In a social security case, the ALJ has a duty to develop a full and fair record.  *See Vesy v. Astru*, 353 F. App'x 219, 224 (11th Cir. 2009).  This obligation, however, does not alleviate the claimant's burden of proving that she is disabled.  *See id.*  "In determining whether it is necessary to remand a case for development of the record, we consider 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'"  *See id.* (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

With regard to whether another consultative examination is necessary, the ALJ may order additional examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled.  *See id.* (citing 20 C.F.R. § 416.917).  The ALJ, however, does not need to seek an additional examination if the evidence in the record is sufficient to allow for an informed decision.  *See id.* (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F. 3d 1253, 1269 (11th Cir. 2007)).

In this case, the undersigned cannot say that the evidence in the record is insufficient.  Indeed, as Ms. Harris recognizes, there is ample medical evidence in the record after Dr. Junejo's RFC assessment was done in April 2017 from other medical providers, through to March 2018.  Additionally, the undersigned disagrees that Dr. Junejo's RFC assessment was stale or that another consultative examination was necessary.  The undersigned notes, for example, that Dr. Meijo determined that

Ms. Harris had achieved maximum medical improvement in November 2016, before Dr. Junejo's RFC assessment, and the same conclusion was reached by the Dr. Fedore in August 2017, just a few months after Dr. Junejo's RFC assessment. Moreover, as discussed above, while the ALJ assigned great weight to Dr. Junejo's opinion, she also recognized that the doctor did not have the benefit of all the information before the ALJ and, thus, strayed from Dr. Junejo's RFC assessment. The problem here is that it is unclear how the ALJ reached her RFC determination.

Accordingly, it is respectfully RECOMMENDED that:

1.    The Commissioner's decision be set aside and the matter REMANDED under Sentence Four of 42 U.S.C. §§ 405(g) for further proceedings consistent with this report and recommendation.

2.    The clerk be directed to enter judgment in favor of plaintiff and close the file.

Done at Pensacola, Florida, this 23rd day of October, 2020.

/s/ Hope Thai Cannon

HOPE THAI CANNON
UNITED STATES MAGISTRATE JUDGE

Case No. 4:19-cv-448-MW-HTC

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.